UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

**ADT LLC and THE ADT SECURITY
CORPORATION,**

        *Plaintiffs,*

vs.

        Case No. 9:21-cv-80762

**RING LLC**,

        *Defendant.*

_____

## COMPLAINT

Plaintiffs ADT LLC and The ADT Security Corporation (together "ADT") bring this action against Defendant Ring LLC ("Ring"), and in support allege as follows:

### ADT'S LONG HISTORY OF INNOVATION

1.     ADT is the largest and best-known provider of home security and automation technology and services in the United States. For decades, ADT's Famous Blue Octagon—an iconic trademark recognizable virtually anywhere in the United States—has been a symbol of ADT's dedication to its customers. ADT's more than 6 million customers proudly display ADT's Famous Blue Octagon to let others know that ADT is always there to help protect and connect what matters most to them. Visible on a lawn sign or a sticker in a street-facing window, ADT's Famous Blue Octagon makes customers feel safer, communicating to all who pass ADT's reputation for trust, vigilance, and reliability.

2.     From ADT's creation of the first security monitoring and response service in 1874, to its pioneering of automated burglar alarm systems in the mid-twentieth century, to becoming a

1

leading provider of security and smart home solutions today, ADT has been a leader in innovation for over 145 years—patenting hundreds of security industry firsts during that span.

3.      As part of ADT's commitment to innovation, ADT often works with industry startups, such as Ring. Founded in 2013 as "Doorbot," Ring was discovered through the TV show *Shark Tank*, and was later acquired by Amazon.com, Inc. ("Amazon"). Ring manufactures various smart home products, such as the Ring Video Doorbell. The startup is known less for security services than for smart home convenience and connectivity features that its parent company Amazon helped to popularize.

4.      Unfortunately, while ADT has had a storied history of partnering to innovate on behalf of its customers, Ring has had a history of misappropriating ADT's intellectual property.

### RING'S PRIOR MISAPPROPRIATION OF ADT'S TECHNOLOGY

5.      In early 2017, only a few years into its existence, Ring sought to accelerate its nascent security capabilities by misappropriating a software platform that ADT had spent several years developing.

6.      ADT first began working with Ring in 2015—showcasing use of the Ring Video Doorbell with ADT's home security and automation platform at the 2016 Consumer Electronics Show, along with other new smart home products. In July of 2016, ADT began to offer the Ring Video Doorbell to ADT customers for use with their ADT system.

7.      By early 2017, however, Ring had decided to launch its own home security and automation platform in competition with ADT. Without ADT's knowledge, Ring misappropriated an unauthorized copy of the source code and documentation for a new home security and automation platform that ADT was developing with another young company, Zonoff, so that Ring could significantly shorten the time and cost for bringing its own competing security system to

market.

8.      ADT discovered the misappropriation and immediately reached out to Ring to resolve the matter. However, Ring refused to cease use of ADT's intellectual property, and ADT was forced to file suit for misappropriation of ADT trade secrets in the Court of Chancery of the State of Delaware. ADT successfully obtained a preliminary injunction that enjoined Ring from using all of the software, source code, specifications, and related trade secrets for the platform that it had taken, and Ring settled with ADT. *ADT Holdings, Inc. and ADT LLC v. Michael Harris and Bot Home Automation, Inc., d/b/a Ring.com*, Case No. 2017-0328 (Del. Ch.).

9.      In April of 2018, Ring was sold to Amazon.

## ADT'S RELATIONSHIP WITH AMAZON

10.      As part of ADT's commitment to innovate on behalf of its customers, ADT also has a separate relationship with Amazon.

11.      ADT had spent substantial time and resources developing the technology that would allow functional pairing of devices to its home security platforms, to further enhance the customer experience in using its products.

12.      In January of 2017, ADT first showcased the integration of its home security and automation system with Amazon's Echo and Echo Dot products to its ecosystem at the 2017 Consumer Electronics Show.

13.      In September of 2018, Amazon announced ADT as its Professional Installation and Monitoring Solution for Alexa Guard.

14.      Not surprisingly, ADT no longer actively promotes the Ring Video Doorbell. However, ADT still purchases the Ring Video Doorbell to support ADT's customers who desire to use them with their ADT systems.

## RING'S MISAPPROPRIATION OF ADT'S FAMOUS BLUE OCTAGON

15.    Even before its rebuke for misappropriating ADT's software, Ring was attempting another open theft—the theft of ADT's Famous Blue Octagon—seeking to tout a reputation for trust to potential customers that it has not earned.

16.    Because of potential for confusion between ADT and Ring's respective offerings, the Master Sales Agreement dated February 1, 2016 for the Ring Video Doorbell ("ADT-Ring MSA") provides that Ring shall "(i) not use or acquiesce in the use of any trademarks or trade names which are likely to be confusingly similar to the trademarks or trade names encompassed by ADT Intellectual Property; (ii) not knowingly unite, join or combine ADT Intellectual Property with any other symbols, names, or trademarks, except for marketing activities as contemplated by this Agreement . . . ."

17.    Notwithstanding this express obligation, only a few months later Ring began offering a lighted yard sign that was confusingly similar to ADT's Famous Blue Octagon:



18.    ADT is not aware of Ring using any octagon logo, much less a blue octagon, prior to the launch of its lighted yard sign.

19.     Concerned by Ring's actions, ADT reached out to Ring in August 2016 for Ring to take appropriate steps to avoid infringing ADT's Famous Blue Octagon and minimize the risk of confusion by the public.

20.     Ring changed the coloring of its yard sign to remove the majority of the color blue:



21.     With the understanding that Ring would also take affirmative steps to avoid confusion as part of the relationship between the parties, ADT took no further action at that time. ADT did not waive any of its rights to take subsequent action against Ring.

22.     In November of 2020, Amazon notified ADT of its intent to terminate the ADT-Ring MSA, and ADT agreed to add purchases of the Ring Video Doorbell to the Authorized Amazon Reseller Sales Agreement between ADT and Amazon dated April 11, 2017 ("ADT-Amazon RSA").

23.     In February of 2021, the ADT-Ring MSA was terminated, with ADT now purchasing the Ring Video Doorbell under the ADT-Amazon RSA, under which Amazon, for itself and its designated Affiliate, Ring, also agreed not to misappropriate ADT's trademarks, including ADT's Famous Blue Octagon, and not to use language or pictures which could reasonably imply any endorsement by or agency relationship with ADT.

24.     In late March 2021, ADT was surprised to learn that Ring had adopted a blue octagon mark ("the Infringing Mark") that is virtually indistinguishable from ADT's Famous Blue

Octagon for use in connection with Ring's own security offerings, including the Ring Alarm Outdoor Siren. While Ring changed the color of its yard sign in 2016 to remove a majority of the blue color to minimize the risk of confusing the public, Ring now outright copies ADT's Famous Blue Octagon as the Ring Alarm Outdoor Siren is solid blue:



25.     Upon information and belief, Ring adopted the Infringing Mark because Ring believes that when the public sees a solid blue octagon on a home, they will think of ADT. Indeed, even though the blue octagon mark that Ring is using includes the Ring name, it also appears that Ring had deployed the Infringing Mark under the assumption that people will believe that Ring is providing a security service on par with ADT—or, worse, that Ring is providing its security service in partnership with ADT.

26.     The striking similarity of Ring's Infringing Mark to ADT's Famous Blue Octagon strongly indicates Ring's intentions to associate its security offerings with ADT to reap the benefit of the goodwill associated with ADT's brand and reputation.

27.     Ring's unauthorized use of ADT's Famous Blue Octagon will cause confusion with ADT's customers, potential customers and the public at large, and will cause them to mistakenly believe that there is an affiliation or association between Ring and ADT.

28.     Ring's use of ADT's Famous Blue Octagon will mislead consumers to believe that Ring is endorsed by and/or partnering with ADT, or will cause consumers to believe that Ring's products are genuine ADT products when, in fact, they are not. This type of confusion seriously undermines the goodwill that ADT has cultivated in its Famous Blue Octagon and irreparably harms ADT.

29.     As a result, ADT has brought this action at law and equity against Ring for willful trademark infringement, unfair competition, and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); common law trademark infringement; unfair competition under Florida law; and Trademark Dilution under the Lanham Act, 15 U.S.C. § 1125(c) and under Fla. Stat. § 495.151. Among other relief, ADT asks this Court to: (a) preliminarily enjoin Ring from using ADT's Famous Blue Octagon and all colorably similar marks; (b) permanently enjoin Ring from using ADT's Famous Blue Octagon and all colorably similar marks; (c) award ADT monetary damages and to treble that award; (d) require Ring to disgorge all profits from sales of the Ring Alarm Outdoor Siren or as otherwise associated with Ring's use of the Infringing Mark for its security products and services; and (e) award ADT punitive damages, attorneys' fees, and costs.

## THE PARTIES

30.     Plaintiff, The ADT Security Corporation, is a Delaware corporation with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431. The ADT Security Corporation is a holding company that owns, inter alia, all ADT trademarks, including without limitation twelve (12) federal trademark registrations on ADT's octagon design marks, including ADT's Famous Blue Octagon, and bearing U.S. federal trademark Registration Nos. 2,399,377; 2,857,796; 2,927,154; 3,324,938; 3,329,547; 3,335,240; 3,421,798; 3,511,262; 3,511,264; 3,902,451; 3,906,116; and 5,672,406. ADT's federally registered and common law Blue Octagon

Marks are referred to collectively throughout this Complaint as "ADT's Famous Blue Octagon" or "ADT's Blue Octagon Mark." The ADT Security Corporation is ultimately wholly owned by ADT Inc., a Delaware corporation whose common stock is traded on the New York Stock Exchange.

31.     Plaintiff ADT LLC is a Delaware limited liability company with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431. ADT LLC is an operating company that runs the ADT alarm services business in the United States. ADT LLC uses the ADT trademarks, including ADT's Famous Blue Octagon, under license from The ADT Security Corporation. ADT LLC is owned by The ADT Security Corporation.

32.     On information and belief, Defendant Ring LLC is a Delaware limited liability company with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.

## JURISDICTION AND VENUE

33.     This Court has subject matter jurisdiction over this action under at least 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338 and supplemental jurisdiction over ADT's related state and common law claims under 28 U.S.C. § 1367.

34.     This Court has personal jurisdiction over Ring at least pursuant to §§ 48.193(1)(a)(2) and 48.193(1)(a)(6) of the Florida long-arm statute because Ring has committed violations of the Lanham Act in Florida by virtue of the accessibility of Ring's website in Florida, which has been viewed by persons located in Florida, and which prominently displays the Infringing Mark, and because ADT, a Florida resident, has suffered injury in Florida as a result of Ring's violations of the Lanham Act.

35.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because events giving rise to this action occurred, and are continuing to occur, in this District and because Ring is subject

to the Court's personal jurisdiction in this District for committing tortious conduct in this District and because ADT has suffered harm in this District as described in this Complaint.

## ADT AND ITS FAMOUS BLUE OCTAGON MARK

36.    ADT has a long-standing record of providing high quality and reliable monitored security and automation services, expertise in system sales and installation, superior customer care, and industry-leading experience and knowledge.

37.    ADT is the owner of twelve (12) federal trademark registrations listed on the Principal Register for octagon marks, including the Blue Octagon Mark, for a variety of security offerings, true and correct copies of which are attached to this Complaint:

a.    **U.S. Reg. No. 5,672,406**, for the mark:



(**Exhibit A**) (filed November 9, 2017, registered February 12, 2019, with a first use in commerce date of May 29, 2017) for certain goods and/or services, including fire and burglar alarm systems, installation, maintenance and repair services for building management, telecommunication services, technical supervision and inspection in the field of security, home health monitoring;

b.    **US. Reg. No. 3,906,116**, for the mark:



(**Exhibit B**) (filed January 4, 2008, registered January 18, 2011, on the basis of a European Community trademark registration) for certain goods and/or services, including fire and burglar alarm systems, telecommunication services, technical consultation services, alarm response and verification services, supervision and inspection in the field of security;

   c. Incontestable **U.S. Reg. No. 3,902,451**, for the mark:



(**Exhibit C**) (filed January 4, 2008, registered January 11, 2011, on the basis of a European Community trademark registration) for certain goods and/or services, including fire and burglar alarm systems, telecommunication services, technical supervision, alarm response and verification services;

d.   Incontestable **U.S. Reg. No. 3,511,264**, for the mark:



(**Exhibit D**) (filed December 11, 2007, registered October 7, 2008, with a first use in commerce date of May 15, 2006) for certain goods and/or services, including emergency roadside assistance services, telecommunication services, electronic monitoring for security purposes;

e.   Incontestable **U.S. Reg. No. 3,511,262**, for the mark:



(**Exhibit E**) (filed December 11, 2007, registered October 7, 2008, with a first use in commerce date of May 15, 2006) for certain goods and/or services, including emergency roadside assistance services, telecommunication services, electronic monitoring for security purposes;

f.   Incontestable **U.S. Reg. No. 3,421,798**, for the mark:



(**Exhibit F**) (filed January 22, 2007, registered May 06, 2008, with a first use in commerce date of April 17, 2007) for certain goods and/or services, including computer consultation services;

g.   Incontestable **U.S. Reg. No. 3,335,240**, for the mark:



(**Exhibit G**) (filed August 24, 2006, registered November 13, 2007, with a first use in commerce date of December 12, 2005) for certain goods and/or services, including home health monitoring;

h.   Incontestable **U.S. Reg. No. 3,329,547**, for the mark:



(**Exhibit H**) (filed August 24, 2006, registered November 6, 2007, with a first use in commerce date of December 12, 2005) for certain goods and/or services, including home health monitoring;

   i.   Incontestable **U.S. Reg. No. 3,324,938**, for the mark:



(**Exhibit I**) (filed October 10, 2006, registered October 30, 2007, on the basis of an International Registration) for certain goods and/or services, including computerized tracking and tracing of packages in transit, advertising and business management consultancy;

   j.   Incontestable **U.S. Reg. No. 2,927,154**, for the mark:

13



(**Exhibit J**) (filed May 10, 2002, registered February 22, 2005, with a first use in commerce date of June 1997) for certain goods and/or services, including installation and maintenance of security systems, fire and burglar alarms, technical supervision and inspection, central station electric protection services;

      k.   Incontestable **U.S. Reg. No. 2,857,796**, for the mark:



(**Exhibit K**) (filed June 25, 2002, registered June 29, 2004, with a first use in commerce date of 1991) for certain goods and/or services, including installation and maintenance services for building management and electric signaling, fire and burglar alarms, central station electric protection services; and

      l.   Incontestable **U.S. Reg. No. 2,399,377**, for the mark:



(**Exhibit L**) (filed April 19, 1999, registered October 31, 2000, with a first use in commerce date of June 1997) (the horizontal lines in the mark drawing above were the prescribed manner at the time of filing the application to indicate the color blue) for certain goods and/or services, including security system monitoring services, fire and burglar alarms.

38.     ADT has invested substantial resources in advertising and promoting its security offerings under the Blue Octagon Mark.

39.     ADT has received substantial revenues from the sale of security offerings under the Blue Octagon Mark. As of December 31, 2020, ADT served approximately 6.5 million recurring revenue customers through more than 300 locations, nine monitoring centers, and the largest network of security and home automation professionals in the U.S.

40.     Through ADT's use of the Blue Octagon Mark, this mark has become widely recognized by the general consuming public as a designation indicating a single source of high quality goods and services, namely ADT. Purchasers rely upon ADT's Blue Octagon Mark for an assurance of high-quality, reliable products and services and trust their safety and personal property to security products and services provided under that mark.

## RING AND ITS UNAUTHORIZED USE OF
## ADT'S FAMOUS BLUE OCTAGON MARK

41.     Ring is a direct competitor of ADT in the home security services and equipment market. ADT and Ring market and sell substantially similar goods and services to the same consuming public.

42.     Ring manufactures numerous security products that are offered for sale and sold at physical retail outlets, such as Home Depot and Lowe's, in the State of Florida, including in this District, and are used within the State of Florida, including in this District, in the ordinary course of commerce, trade, or use.

43.     In a brazen move, Ring recently adopted a mark virtually indistinguishable from ADT's Blue Octagon Mark to advertise, promote, and sell its security offerings, including the Ring Alarm Outdoor Siren, which is illustrated in the following side-by-side comparison between an image displayed in a recent Ring commercial for the Ring Alarm Outdoor Siren on the left and an image of ADT's Blue Octagon Mark on the right:



44.     The Ring Alarm Outdoor Siren, illustrated below, clearly incorporates ADT's Blue Octagon Mark, and is currently available for purchase on the Ring website and at retail outlets, such as Amazon and Home Depot:



45.     Ring's website, which is accessible in Florida, prominently displays Ring's infringing and unauthorized use of ADT's Blue Octagon Mark, which has been viewed by residents in this district:



46.     ADT sent a letter to Ring on April 21, 2021, demanding that Ring stop all use of ADT's Blue Octagon Mark and all confusingly similar marks thereto. ADT's demand letter is attached hereto as **Exhibit M**.

47.     Ring, nevertheless, has continued to use ADT's Blue Octagon Mark to advertise and sell its security offerings.

48.     Ring's adoption and use of ADT's inherently distinctive and well-known Blue Octagon Mark is an attempt to trade off of ADT's goodwill and reputation and to deceive the public into believing that Ring's goods and services are connected with ADT and/or that Ring is providing goods and services in partnership with ADT.

**COUNT I**
**TRADEMARK INFRINGEMENT OF U.S. FEDERAL REGISTRATION NO. 2,399,377**
**UNDER THE LANHAM ACT, 15 U.S.C. § 1114 *ET SEQ.***

49.     ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

50.     ADT owns the entire right, title, and interest in and to U.S. federal trademark Registration No. 2,399,377 ("the '377 Mark").

51.     Ring has reproduced, copied, and imitated the '377 Mark in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

52.     Ring's unauthorized use of the '377 Mark is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings, including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

53.     Ring's acts are willful, intentional, and deliberate. For example, and without limitation, Ring was well aware of how famous the '377 Mark is and selected a virtually indistinguishable mark due to its similarity to the '377 Mark in an effort to exploit ADT's goodwill.

54.     As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

18

## COUNT II
## TRADEMARK INFRINGEMENT OF U.S. FEDERAL REGISTRATION NO. 2,857,796 UNDER THE LANHAM ACT, 15 U.S.C. § 1114 *ET SEQ.*

55.     ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

56.     ADT owns the entire right, title, and interest in and to U.S. federal trademark Registration No. 2,857,796 ("the '796 Mark").

57.     Ring has reproduced, copied, and imitated the '796 Mark in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

58.     Ring's unauthorized use of the '796 Mark is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings, including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

59.     Ring's acts are willful, intentional, and deliberate. For example, and without limitation, Ring was well aware of how famous the '796 Mark is and selected a virtually indistinguishable mark due to its similarity to the '796 Mark in an effort to exploit ADT's goodwill.

60.     As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

## COUNT III
## TRADEMARK INFRINGEMENT OF U.S. FEDERAL REGISTRATION NO. 2,927,154 UNDER THE LANHAM ACT, 15 U.S.C. § 1114 *ET SEQ.*

61.     ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

62.     ADT owns the entire right, title, and interest in and to U.S. federal trademark Registration No. 2,927,154 ("the '154 Mark").

63.     Ring has reproduced, copied and imitated the '154 Mark in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

64.     Ring's unauthorized use of the '154 Mark is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings, including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

65.     Ring's acts are willful, intentional, and deliberate. For example, and without limitation, Ring was well aware of how famous the '154 Mark is and selected a virtually indistinguishable mark due to its similarity to the '154 Mark in an effort to exploit ADT's goodwill.

66.     As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

**COUNT IV**
**TRADEMARK INFRINGEMENT OF U.S. FEDERAL REGISTRATION NO. 3,324,938**
**UNDER THE LANHAM ACT, 15 U.S.C. § 1114 *ET SEQ.***

67.     ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

68.     ADT owns the entire right, title, and interest in and to U.S. federal trademark Registration No. 3,324,938 ("the '938 Mark").

69.     Ring has reproduced, copied, and imitated the '938 Mark in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

70.     Ring's unauthorized use of the '938 Mark is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings,

including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

71.     Ring's acts are willful, intentional, and deliberate. For example, and without limitation, Ring was well aware of how famous the '938 Mark is and selected a virtually indistinguishable mark due to its similarity to the '938 Mark in an effort to exploit ADT's goodwill.

72.     As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

**COUNT V**
**TRADEMARK INFRINGEMENT OF U.S. FEDERAL REGISTRATION NO. 3,329,547**
**UNDER THE LANHAM ACT, 15 U.S.C. § 1114 *ET SEQ.***

73.     ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

74.     ADT owns the entire right, title, and interest in and to U.S. federal trademark Registration No. 3,329,547 ("the '547 Mark").

75.     Ring has reproduced, copied and imitated the '547 Mark in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

76.     Ring's unauthorized use of the '547 Mark is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings, including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

77.     Ring's acts are willful, intentional, and deliberate. For example, and without limitation, Ring was well aware of how famous the '547 Mark is and selected a virtually indistinguishable mark due to its similarity to the '547 Mark in an effort to exploit ADT's goodwill.

78.     As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

## COUNT VI
## TRADEMARK INFRINGEMENT OF U.S. FEDERAL REGISTRATION NO. 3,335,240 UNDER THE LANHAM ACT, 15 U.S.C. § 1114 *ET SEQ.*

79.     ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

80.     ADT owns the entire right, title, and interest in and to U.S. federal trademark Registration No. 3,335,240 ("the '240 Registration").

81.     Ring has reproduced, copied, and imitated the '240 Registration in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

82.     Ring's unauthorized use of the '240 Registration is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings, including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

83.     Ring's acts are willful, intentional, and deliberate. For example, and without limitation, Ring was well aware of how famous the '240 Registration is and selected a virtually indistinguishable mark due to its similarity to the '240 Registration in an effort to exploit ADT's goodwill.

84.     As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

## COUNT VII
## TRADEMARK INFRINGEMENT OF U.S. FEDERAL REGISTRATION NO. 3,421,798 UNDER THE LANHAM ACT, 15 U.S.C. § 1114 *ET SEQ.*

85.     ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

86.     ADT owns the entire right, title, and interest in and to U.S. federal trademark Registration No. 3,421,798 ("the '798 Mark").

87.     Ring has reproduced, copied, and imitated the '798 Mark in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

88.     Ring's unauthorized use of the '798 Mark is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings, including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

89.     Ring's acts are willful, intentional, and deliberate. For example, and without limitation, Ring was well aware of how famous the '798 Mark is and selected a virtually indistinguishable mark due to its similarity to the '798 Mark in an effort to exploit ADT's goodwill.

90.     As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

**COUNT VIII**
**TRADEMARK INFRINGEMENT OF U.S. FEDERAL REGISTRATION NO. 3,511,262**
**UNDER THE LANHAM ACT, 15 U.S.C. § 1114 *ET SEQ.***

91.     ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

92.     ADT owns the entire right, title, and interest in and to U.S. federal trademark Registration No. 3,511,262 ("the '262 Mark").

93.     Ring has reproduced, copied, and imitated the '262 Mark in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

94.     Ring's unauthorized use of the '262 Mark is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings, including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

95.     Ring's acts are willful, intentional, and deliberate. For example, and without limitation, Ring was well aware of how famous the '262 Mark is and selected a virtually indistinguishable mark due to its similarity to the '262 Mark in an effort to exploit ADT's goodwill.

96.     As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

**COUNT IX**
**TRADEMARK INFRINGEMENT OF U.S. FEDERAL REGISTRATION NO. 3,511,264**
**UNDER THE LANHAM ACT, 15 U.S.C. § 1114 *ET SEQ.***

97.     ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

98.     ADT owns the entire right, title, and interest in and to U.S. federal trademark Registration No. 3,511,264 ("the '264 Mark").

99.     Ring has reproduced, copied, and imitated the '264 Mark in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

100.     Ring's unauthorized use of the '264 Mark is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings, including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

101.     Ring's acts are willful, intentional, and deliberate. For example, and without limitation, Ring was well aware of how famous the '264 Mark is and selected a virtually

indistinguishable mark due to its similarity to the '264 Mark in an effort to exploit ADT's goodwill.

102.    As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

## COUNT X
### TRADEMARK INFRINGEMENT OF U.S. FEDERAL REGISTRATION NO. 3,902,451 UNDER THE LANHAM ACT, 15 U.S.C. § 1114 *ET SEQ.*

103.    ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

104.    ADT owns the entire right, title, and interest in and to U.S. federal trademark Registration No. 3,902,451 ("the '451 Mark").

105.    Ring has reproduced, copied and imitated the '451 Mark in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

106.    Ring's unauthorized use of the '451 Mark is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings, including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

107.    Ring's acts are willful, intentional, and deliberate. For example, and without limitation, Ring was well aware of how famous the '451 Mark is and selected a virtually indistinguishable mark due to its similarity to the '451 Mark in an effort to exploit ADT's goodwill.

108.    As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

## COUNT XI
### TRADEMARK INFRINGEMENT OF U.S. FEDERAL REGISTRATION NO. 3,906,116 UNDER THE LANHAM ACT, 15 U.S.C. § 1114 *ET SEQ.*

109.    ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

110.     ADT owns the entire right, title, and interest in and to U.S. federal trademark Registration No. 3,906,116 ("the '116 Mark").

111.     Ring has reproduced, copied, and imitated the '116 Mark in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

112.     Ring's unauthorized use of the '116 Mark is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings, including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

113.     Ring's acts are willful, intentional, and deliberate. For example, and without limitation, Ring was well aware of how famous the '116 Mark is and selected a virtually indistinguishable mark due to its similarity to the '116 Mark in an effort to exploit ADT's goodwill.

114.     As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

**COUNT XII**
**TRADEMARK INFRINGEMENT OF U.S. FEDERAL REGISTRATION NO. 5,672,406**
**UNDER THE LANHAM ACT, 15 U.S.C. § 1114 *ET SEQ.***

115.     ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

116.     ADT owns the entire right, title, and interest in and to U.S. federal trademark Registration No. 5,672,406 ("the '406 Mark").

117.     Ring has reproduced, copied, and imitated the '406 Mark in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

118.    Ring's unauthorized use of the '406 Mark is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings, including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

119.    Ring's acts are willful, intentional, and deliberate. For example, and without limitation, Ring was well aware of how famous the '406 Mark is and selected a virtually indistinguishable mark due to its similarity to the '406 Mark in an effort to exploit ADT's goodwill.

120.    As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

## COUNT XIII
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(A) *ET SEQ.*

121.    ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

122.    Ring is using ADT's Famous Blue Octagon Mark for security offerings, including the Ring Alarm Outdoor Siren, which compete with ADT's security offerings.

123.    Ring's acts are likely to cause confusion, mistake, or deception as to the origin, connection, association, sponsorship, or approval of Ring's security offerings by or with ADT's security offerings.

124.    As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

## COUNT XIV
## COMMON LAW TRADEMARK INFRINGEMENT

125.    ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

126.    Over the course of many years, ADT has used the Famous Blue Octagon Mark in the State of Florida in connection with the advertising and sale of its security offerings, and as such, possesses common law trademark rights in the Blue Octagon Mark.

127.    Ring has reproduced, copied, and imitated the Famous Blue Octagon Mark in connection with advertising, promoting, and selling security offerings, including the Ring Alarm Outdoor Siren, in competition with ADT and without ADT's consent.

128.    Ring's unauthorized use of the Famous Blue Octagon Mark is likely to cause confusion, mistake, or to deceive consumers because the public is likely to believe that Ring's security offerings, including the Ring Alarm Outdoor Siren, are approved by, associated with, sponsored by, or connected with ADT.

129.    Ring's acts are willful, intentional, and deliberate. For example and without limitation, Ring was well aware of how famous the Blue Octagon Mark is and selected a virtually indistinguishable mark due to its similarity to the Blue Octagon Mark in an effort to exploit ADT's goodwill.

130.    As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

**COUNT XV**
**COMMON LAW UNFAIR COMPETITION**

131.    ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

132.    ADT has used ADT's Famous Blue Octagon Mark in the State of Florida in connection with the advertising and sale of security offerings.

133.    ADT's Famous Blue Octagon Mark had become famous and distinctive in the State of Florida long before Ring's unlawful use of that mark.

134.     Ring has violated Florida common law by using ADT's Famous Blue Octagon Mark in connection with its security offerings, including the Ring Alarm Outdoor Siren, in order to mislead the public into believing that Ring's security offerings are authorized or sponsored by ADT.

135.     Ring's willful and intentional acts are likely to cause confusion, mistake, or deception as to the origin, connection, association, sponsorship, or approval of Ring and Ring's security offerings by or with ADT and ADT's security offerings.

136.     As a direct and proximate result of Ring's unlawful acts, ADT has suffered and will continue to suffer monetary damages and irreparable harm.

**COUNT XVI**
**TRADEMARK DILUTION**
**UNDER THE LANHAM ACT, 15 U.S.C. § 1125(c) *ET SEQ.***

137.     ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

138.     ADT's Blue Octagon Mark is famous.

139.     ADT's Blue Octagon Mark was famous long prior to Ring's adoption of the Infringing Mark.

140.     Ring's unlawful use of ADT's Famous Blue Octagon Mark is commercial and in commerce at least because Ring offers for sale and sells the Ring Outdoor Alarm Siren, which consists of the Infringing Mark.

141.     Through Ring's improper use of ADT's Blue Octagon Mark, Ring has diluted the Blue Octagon Mark, including but not limited to lessening the capacity of the Blue Octagon Mark to identify and distinguish ADT's goods and/or services.

## COUNT XVII
## <u>TRADEMARK DILUTION</u>
## <u>UNDER FLORIDA LAW, FLA. STAT. § 495.151 *ET SEQ.*</u>

142.    ADT incorporates paragraphs 1-48 of the Complaint as if set forth fully herein.

143.    ADT has adopted and used its Famous Blue Octagon Mark in Florida in conjunction with sales of its goods and/or services.

144.    Subsequent to ADT's adoption and use of its Famous Blue Octagon Mark and after it became famous in Florida, Ring adopted a similar mark, namely the Infringing Mark.

145.    As a result of Ring's adoption of the Infringing Mark, ADT is likely to suffer injury to its business reputation and/or dilution of the Famous Blue Octagon Mark's distinctive quality.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, ADT prays that this Court enter judgment in ADT's favor on the claims set forth above and award ADT the following relief:

a.      enter a judgment in favor of ADT against Ring on all Counts alleged herein;

b.      preliminarily enjoin Ring's ongoing wrongful conduct, including preliminarily enjoining Ring from using ADT's Famous Blue Octagon Mark and all colorably similar marks;

c.      permanently enjoin Ring's ongoing wrongful conduct, including permanently enjoining Ring from using ADT's Famous Blue Octagon Mark and all colorably similar marks;

d.      order Ring to remove all materials bearing on ADT's Famous Blue Octagon Mark and all colorably similar marks from commerce, including without limitation, the Ring Alarm Outdoor Siren;

e.      deem Ring's infringement willful;

f.      deem this case exceptional pursuant to 15 U.S.C. § 1117;

g.      award monetary relief to ADT in an amount to be determined, including all profits received by Ring from sales and revenues of any kind made as a result of its infringing actions; all damages sustained by ADT as a result of Ring's acts of infringement, unfair competition, and dilution; punitive damages; treble damages; attorneys' fees and costs, and prejudgment interest; and

h.      such other and further relief as this Court may deem just and proper.

## JURY DEMAND

ADT hereby requests a trial by jury of issues so triable.

DATED: April 26, 2021

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.


By: /s/ <u>Eric S. Boos</u>
Jennifer A. McLoone
Florida Bar No. 029234
jmcloone@shb.com
Eric S. Boos
Florida Bar No. 0107673
eboos@shb.com
201 S. Biscayne Blvd., Ste.3200
Miami, Florida 33131
Tel: (305) 358-5171
Fax: (305) 358-7470

-and-

B. Trent Webb (*pro hac vice* forthcoming)
Clinton G. Newton (*pro hac vice* forthcoming)
Patrick A. Lujin (*pro hac vice* forthcoming)
Chrissie A. Guastello (*pro hac vice* forthcoming)
Beth A. Larigan (*pro hac vice* forthcoming)
2555 Grand Boulevard
Kansas City, MO 64108
Tel: (816) 474-6550
Fax: (816)421-5547

***Attorneys for Plaintiffs ADT LLC and
The ADT Security Corporation***